**People of the State of Illinois, Plaintiff-Appellee, v. Lester Jones, Defendant-Appellant.**

**Gen. No. 51,335.**

First District, Fourth Division.

February 14, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman, Marshall J. Hartman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant was found guilty of involuntary manslaughter after a jury trial and was sentenced to serve a term in the penitentiary of not less than six nor more than ten years. The sole issue on this appeal is the propriety of the sentence.

Defendant was sitting in front of his home at 1130 East 42nd Street in the presence of James Crittendon,

Nathaniel Knight and decedent, Samuel McCorkle. Decedent was his friend and had been playing with Nathaniel Knight waving a pocket knife backwards and forwards in front of him. Decedent then walked over to defendant, who was sitting in a chair, and began playing with him in the same manner. Defendant asked him to go "because I was going to go upstairs." Decedent continued and defendant pulled a gun from his hip pocket. The hammer cocked when he pulled it out and the gun spun around his finger and went off. Both defendant and decedent were just playing at the time of this occurrence. Decedent slumped to the ground and both Crittendon and Knight started to run. Defendant, seeing a bullet hole in decedent's chest, called the other boys back and persuaded a passerby to take them to the Michael Reese Hospital where defendant remained for about an hour. From the hospital defendant returned to his apartment. After being notified by a neighbor that the police were looking for him he went downstairs where he was arrested. Initially defendant denied knowledge of what happened but he subsequently gave a full confession. An Assistant State's Attorney described his behavior as cooperative.

There was a hearing in aggravation and mitigation at which it was established by defendant that he was twenty years old, that he had never been convicted of a crime although he had been arrested once or twice for a misdemeanor, that he was single, attended Cregier Vocational High School, was a lifelong resident of Chicago and a member of the Baptist faith. After a hearing in aggravation and mitigation the court said:

> I sentence this defendant to a term of not less than six years nor more than ten years, for which time he shall be committed to the Illinois State Penitentiary. Judgment is entered on the finding and sentence. We have too many of these accidents.

126

■ Defendant first seeks reversal of the sentence because the trial judge, after receiving the arguments presented by defense counsel in mitigation, failed to seek "further information as to defendant's moral character, background or occupation." Defendant argues that Illinois Revised Statutes, 1965, chapter 38, § 1–7(g),* requires this of the trial judge, citing People v. Evrard, 55 Ill App 2d 270, 204 NE2d 777. The record shows that defendant's counsel properly argued mitigating circumstances and the judge was not without the relevant information with which to sentence.

■ Defendant's second argument is that the sentence was excessive in view of the youthfulness of the defendant, his lack of a prior conviction, the accidental nature of the occurrence and the purposes of the parole system. More specifically, defendant seeks the lessening of the minimum sentence. Illinois Revised Statutes, 1965, chapter 38, § 9–3(c) provides: "A person convicted of involuntary manslaughter shall be imprisoned in the penitentiary from one to ten years." Thus this sentence was within the statutory mandate. However, in People v. Lillie, 79 Ill App2d 174, 223 NE2d 716, the court said at page 179 in reducing sentence:

Advances in the fields of psychology, psychiatry and sociology have contributed to a greater understanding of the motives underlying the commission of criminal offenses, and the techniques and methods which are of value in the rehabilitation of offenders.

---

* Ill Rev Stats 1965, c 38, § 1–7(g) reads as follows:

For the purpose of determining sentence to be imposed, the court shall, after conviction, consider the evidence, if any, received upon the trial and shall also hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the offender and may consider such evidence in aggravation or mitigation of the offense.

127

The hope of earlier release is a great incentive to a prisoner to participate in the educational and rehabilitation programs provided in modern penal institutions. Excessive minimum sentences, imposed by the courts, may defeat the effectiveness of the parole system by making mandatory the incarceration of a prisoner long after effective rehabilitation has been accomplished.

Inherent in the parole system is the risk of recidivism, but an enlightened society has long since rejected the medieval concept of punishment which imposed the death penalty for crimes now categorized as petty offenses. Society's safeguard against recidivism is the power of the parole authorities to terminate the conditional release and return the offender to prison. A lengthy maximum sentence is not so likely to impede the operation of the system because the prisoner, although subject to parole supervision, is not mandatorily confined.

In the American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Sentencing Alternatives and Procedures (Tentative Draft 1967) it was recommended to the legislatures at page 21 that:

In order to preserve the principle of indeterminacy, the court should not be authorized to impose a minimum sentence which exceeds one-third of the maximum sentence actually imposed.

We believe these principles to be sound. In applying them to the instant case, it must be considered that defendant was a twenty-year-old student at Cregier High School and that he had no prior record of conviction. He cooperated with the police and such cooperation has consistently been considered in mitigation. People v. Steg, 69 Ill App2d 188, 215 NE2d 854. This is not the picture of a person

beyond the reach of rehabilitative processes. The judge's explanation that: "We have had too many of these accidents" evidences a failure to give proper weight to the individual circumstances of the defendant. We feel that setting the minimum sentence at six years and the maximum at ten years is not in the best interests of either the community or the defendant. Accordingly, the minimum sentence is reduced from six years to three years. The judgment and sentence are modified to provide that the sentence imposed on defendant be confinement to the penitentiary for a term of not less than three years nor more than ten years, and as so modified, the judgment is affirmed.

Judgment modified, and as modified, affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.