THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEON HOLLIS, Defendant-Appellant.

First District (4th Division)   No. 76-756

Opinion filed February 23, 1978.—Rehearing denied March 9, 1978.

Sam Adam and Alan D. Blumenthal, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Mary Ellen Dienes, and Paul E. Kelly, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LINN delivered the opinion of the court:

Defendant, Leon Hollis, was charged in a two count indictment with possession of controlled substances. (Ill. Rev. Stat. 1971, ch. 56½, par. 1402(a).) The controlled substances were described in the counts of the indictment as heroin and cocaine, respectively.

Before trial, the court denied defendant's motions to conduct a hearing to inquire into the truthfulness of the allegations contained in the complaint for the search warrant and to produce the informer. The judge also denied, after a hearing, defendant's motion to quash the search warrant and to suppress certain evidence.

The trial commenced on January 12, 1976, before a jury. The following day, during the State's presentation of its case-in-chief, defendant chose to waive the jury. The case then continued on as a bench trial. Defendant was found guilty on both counts, and sentenced to a term of four to 12 years in the Illinois State Penitentiary.

On appeal, defendant contends that: (1) certain physical evidence, objected to by him at trial, should not have been admitted into evidence; (2) the police officers' manner of entry into his dwelling, although pursuant to a search warrant, violated his constitutional right prohibiting unreasonable searches and seizures; and (3) the trial judge improperly refused to conduct a hearing into the truthfulness of the allegations contained in the complaint for the search warrant.

We affirm the decision of the trial court.

At 12:15 a.m. on September 10, 1973, pursuant to an application by Officer Earnest Cain of the Chicago Police Department, a search warrant was issued authorizing the search of defendant and his premises and the seizure of "Heroin, Cocaine and other Narcotic articles used in the destribution [sic] and sale of Narcotics and the Money derived from such activitys [sic]."

Officer Cain and his partner, Officer James Ahern, testified at the hearing on the motion to suppress and at trial. Their testimony disclosed that after obtaining the search warrant, they proceeded with eight other Chicago police officers to the apartment building at 7834 S. Phillips where defendant resided. The officers arrived at approximately 1:45 a.m., and observed, as they had been previously told by an informant, that the front door of defendant's second floor apartment was protected by locked burglar bars.

Officer Ahern and two other officers entered the apartment building and approached the front door to the second floor apartment. Other

officers were assigned to the rear door. Officer Cain positioned himself in a gangway on the south side of the building.

Officer Ahern testified that he took out a pair of bolt cutters and attempted to cut the lock on the burglar bars covering the front door. He was unsuccessful in cutting the lock as the bolt cutter he was using broke. He then hit the lock approximately five times and the lock broke. Immediately thereafter, he proceeded to knock down the front door and gain entry into the apartment.

Officer Ahern further testified that he neither announced himself as a police officer; nor did he mention that he had a search warrant; nor did he hear the officers stationed in the rear so announce themselves prior to the entry into the apartment. Immediately after the bolt cutters broke, Ahern did hear intermittent sounds in the apartment which he characterized as the running of someone in their bare feet. Ahern stated that he entered the apartment almost simultaneously with the officers entering through the back door.

Officer Cain, while stationed in the gangway, observed that there were no lights discernible in the second floor apartment windows. Cain heard a knocking sound and a muffled voice which he believed belonged to Officer Wallace. The voice was saying words to the effect that they were police officers armed with a search warrant. Cain then heard a loud crashing noise which sounded like a door being knocked down. He then observed a small light appear in the second floor apartment and the window being raised halfway. Cain crouched down and when he looked up, he saw a man from the shoulders up leaning out the window. The man turned his head to each side and then pulled back into the apartment. The man leaned out a second time and Cain observed that he was wearing a sleeveless, multicolored T-shirt. The man then took a bag and threw it out the window close to the wall of the building. When the bag hit the ground, Cain retrieved it and began walking towards the front of the building. As he was walking, he examined the bag and noticed it was a blue Seagram Crown Royal liquor pouch. Inside the bag were nine plastic packets containing white powder, and a plastic bag containing crushed green plant.

When Cain entered the apartment, the other police officers were already there and were searching various rooms. A man, wearing a multicolored, sleeveless T-shirt was in the living room. Cain placed him under arrest and advised him of his constitutional rights.

At trial, before the jury, Officer Cain testified over continuing objections by defendant, that the other officers retrieved a large bundle of money, quantities of white powder, capsules, a gun, a pair of gloves, a set of measuring spoons and a quantity of marijuana from defendant's

apartment.After the judge indicated that these items would be admitted into evidence, defendant chose to waive the jury, proceed with a bench trial and offer no defense.

In proceeding with the stipulated bench trial, the State introduced into evidence the heroin, cocaine, and marijuana which were found in the Seagram's Crown Royal pouch. Defendant preserved his initial objection to the admission into evidence of the bag of marijuana, $1,519 in United States currency, a gun and bullets and a loaded gun, a quantity of nonnarcotic white powder, a quantity of nonnarcotic brown powder, plastic gloves, a quantity of capsules not containing narcotics and a set of measuring spoons all of which were found in the apartment.

The record does not clearly reflect the trial judge's final determination as to the admissibility of the physical evidence. Just before the conclusion of the trial, the following colloquy took place between the trial judge and Mr. Cutrone, defendant's counsel:

> "Mr. Cutrone: Judge, of course, we object to those items which I have previously enumerated to your honor.
>
> The Court: Except as to those items which the defendant objected, it may be admitted. All of the items are admitted. The defendant's objections are noted as to the items being objected to."

Based upon the statement of the trial judge it is unclear whether he excluded the exhibits objected to by defendant, or whether he admitted all the evidence, while merely noting defendant's objections.

■■ Defendant contends that the trial judge, in admitting evidence that was extraneous to the charged offense, inferentially and improperly attributed to the defendant other bad acts and crimes. Defendant urges that the prejudicial effect of admitting this evidence into the trial constituted reversible error under the facts of this case. The State argues that the challenged evidence was ultimately not admitted by the trial judge. Furthermore, since the marijuana was the only item of an illegal nature found in the apartment, its introduction into evidence, in light of the other overwhelming evidence proving defendant's guilt, would have, at most, constituted harmless error.

Assuming that the trial judge did admit the challenged items, we find that their admission was at most harmless error. (*People v. Gill* (1973), 54 Ill. 2d 357, 297 N.E.2d 135; *People v. Hammond* (1976), 44 Ill. App. 3d 956, 359 N.E.2d 1.) It is well established that evidence of offenses other than the one for which the accused is being tried is inadmissible if used solely for the purpose of showing the accused's propensity to commit a crime. (*People v. Trejo* (1976), 40 Ill. App. 3d 503, 352 N.E.2d 68; *People v. Bolton* (1976), 35 Ill. App. 3d 965, 343 N.E.2d 190.) However, none of the items in dispute, except for the marijuana, could be said to be evidence of a criminal offense. The possession of marijuana, which is a

misdemeanor, would not have evoked a belief by the trial judge that this was evidence of defendant's propensity to commit the crime of possession of heroin and cocaine. Rather, the probative value of Officer Cain's eyewitness testimony eradicates any possibility that the trial judge's verdict was based on defendant's bad character instead of his guilt or innocence concerning the offenses with which he was charged.

Defendant next contends that the police officer's manner of entry into his premises, although pursuant to a search warrant, deprived him of his constitutional right prohibiting unreasonable searches and seizures. Defendant urges that Ahern's testimony suggesting the police failure to announce their office and purpose mandates the suppression of the evidence seized pursuant to the execution of the search warrant. *People v. Stephens* (1974), 18 Ill. App. 3d 817, 310 N.E.2d 755.

■■ We disagree with this contention on the basis of other testimony contained in the record. Officer Cain's testimony indicates that the requisite announcement was made prior to the police entry into defendant's apartment. Officer Cain stated that he heard a knocking, then a muffled voice, which he believed to be that of Officer Wallace, announcing himself as a police officer with a warrant seeking entry. Shortly thereafter, he heard the crashing noise of the front door being broken down and then observed the light go on in the second floor window and the package drop being made to the outside. It was within the province of the trial judge to weigh the credibility of Officer Cain's testimony and we see no reason to overturn the trial court's finding. We therefore hold that the officers' entry was lawful in that they announced their office and purpose. See also generally *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067.

■■ We briefly consider the final issue raised by defendant. Defendant claims the trial judge erred in refusing to conduct a hearing into the truthfulness of the facts stated in the complaint for the search warrant. This issue has been considered and disposed of by our supreme court in *People v. Bak* (1970), 45 Ill. 2d 140, 258 N.E.2d 341, and in *People v. Mitchell* (1970), 45 Ill. 2d 148, 258 N.E.2d 345.

In *People v. Bak* (1970), 45 Ill. 2d 140, 144, 258 N.E.2d 341, 343, the court said:

> This majority of the court believes that both constitutions contemplate only that a judicial officer find probable cause for the issuance of a warrant based on the evidence under oath that has been presented to him by the one requesting the warrant. It is contemplated that the credibility of the affiant or others offering evidence is for the judicial officer. If he finds the evidence worthy of belief and sufficient to form probable cause, this judicial determination cannot be relitigated through a later disputing of

evidence. Should an affiant betray the confidence in his integrity which is contemplated by the *ex parte* proceeding and intentionally make misrepresentations to the judicial officer, he can be punished for the offense."

There is no evidence in the case at bar that any impropriety took place in the issuance of the search warrant. Officer Cain established the reliability of the informant by stating in his complaint that he knew the informant for four months. Previously, the informant had given him information which had resulted in six narcotics arrests.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

JOHNSON, P. J., and ROMITI, J., concur.